IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JACKIE JUNIOR LIGE,
      Petitioner,

vs.                              Case No.:  5:14cv171/MW/EMT

FLORIDA DEPARTMENT OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's third amended petition for writ of habeas corpus (ECF No. 20).  Respondent filed an answer and relevant portions of the state court record (ECF Nos. 28, 31).  Petitioner filed a reply (ECF No. 33).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 28).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2010-CF-4436, with one count of trafficking in hydrocodone (14 grams or more, but less than 28 grams) (Ex. A at 1).  Following a jury trial, he was found guilty as charged

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (ECF No. 28). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

(Exs. B, C).  On April 6, 2011, Petitioner was sentenced to a mandatory minimum term of fifteen years of imprisonment, with pre-sentence jail credit of 190 days (Ex. D).  Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-2547 (Ex. F).  While the appeal was pending, Petitioner's counsel filed a motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. I).  The trial court denied the motion (Ex. J).  The First DCA affirmed the judgment of conviction and sentence on April 9, 2012 (Ex. N).  Lige v. State, 84 So. 3d 454 (Fla. 1st DCA 2012) (Mem).  The mandate issued April 25, 2012 (Ex. O). Petitioner, through counsel, sought discretionary review in the Supreme Court of Florida, Case No. SC12-740 (Ex. P).  He subsequently filed a notice of voluntary dismissal, and the court dismissed his petition for review on August 22, 2012 (Exs. R, S).  Lige v. State, 99 So. 3d 944 (Fla. 2012) (Table).

On September 24, 2012, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. T).  The state circuit court summarily denied the motion on June 12, 2013 (Ex. X).  Petitioner appealed the decision to the First DCA, Case No. 1D13-3385 (Ex. Y).  The First DCA affirmed the decision per curiam without written opinion on November 27, 2013, with the mandate issuing December 26, 2013 (Exs. Z, AA).  Lige v. State, 127 So. 3d 506 (Fla. 1st DCA 2013) (Table).

On February 27, 2014, Petitioner filed a second Rule 3.850 motion (Ex. BB).  The state circuit court dismissed the motion as successive on June 3, 2014 (Ex. CC).

Also on February 27, 2014, Petitioner filed a habeas petition in the First DCA, Case No. D14-1080, alleging ineffective assistance of appellate counsel (Ex. DD).  The First DCA denied the petition on the merits on April 8, 2014 (Ex. EE).  Lige v. State, 135 So. 3d 1133 (Fla. 1st DCA 2014) (Mem).

Petitioner filed the instant federal habeas action on July 18, 2014 (ECF No. 1).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Richter).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* <u>Gill</u>, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.   <u>Grounds One and Two: "Ineffective assistance of counsel."</u>[3]

---

[3] The state court addressed these interrelated claims together; therefore, this court will do the same.

In Ground One, Petitioner claims that trial counsel was ineffective for failing to investigate, interview, and depose two witnesses, Officer Baker and Ms. Collins (ECF No. 20 at 5).[4] He claims that counsel's failure to investigate these witnesses deprived him of a viable defense (*id.*). In Ground Two, Petitioner claims that trial counsel was ineffective for failing to file a motion to suppress evidence that was obtained after he was illegally "pursued" by law enforcement, without reasonable suspicion or probable cause (*id.* at 7). Petitioner asserts he presented both of these claims in his Rule 3.850 motion (*id.* at 6–7).

Respondent concedes that Petitioner exhausted both claims by raising them in his first Rule 3.850 motion (ECF No. 31 at 25–26). Respondent contends the state court's adjudication of the claims was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 29–44).

      1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's

---

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

actions, "then the courts should presume that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

       2.      Federal Review of State Court Decision

Petitioner raised Grounds One and Two in his Rule 3.850 motion (Ex. T at 9–27). He included the following Statement of Facts, and signed his motion under penalty of perjury:

> On September 29th, 2010, Defendant was a passenger in a vehicle owned and operated by Ms. Collins, who had parked in front of her grandmother's home, the residence of Ms. Emma Robinson. Officer Baker of the Pensacola Police Department had pulled behind Ms. Collin's [sic] vehicle to write a parking citation. Upon the vehicle stopping, Defendant exited the vehicle and entered the residence of Emma Robinson. Officer Baker called for backup and Officer Grantham of the Pensacola Police Department arrived on scene. There is no reason that is apparent or obvious in light of the facts available, that would lead Officer Baker to be in fear, or lead him to have any inclination to believe that a crime had recently been committed, was about to be committed, or that there were any exigent circumstances currently ongoing that would constitute any further police activity during the traffic citation stop. When Officer Grantham arrived at the event location, Officer Baker informed Officer Grantham a passenger had exited Ms. Collin's [sic] vehicle upon the vehicle coming to a stop. There was no further information offered to Officer Grantham indicating or warranting further investigation of the person, which [sic] exited the vehicle.
>
> On direct examination, Officer Grantham stated he went to the house and made contact with resident, Ms. Collin's [sic] grandmother Emma Robinson. (T[rial] T[ranscript] pg. 33, ln. 25 – pg. 34, lns.[lines] 1–2). Officer Grantham spoke with Ms. Robinson who confirmed Defendant had entered her home and gave verbal authorization for Officer Grantham to search the premises. Officer Grantham stated he then went around to the back of the residence where be observed Defendant on the south side of the property approximately 75 feet away from him. Officer Grantham stated he observed Defendant bending over slightly with both hands on his legs looking at the front of the house where the police officers were, and that Defendant did not see Officer Grantham observing him at that time. (T.T. pg. 35 lns. 8–21). Officer Grantham approached Defendant and Defendant fled. Officer Grantham stated Defendant's left hand or his arm went like this (apparently indicating a throwing motion) and that he heard an object thud or hit a wooden fence. (T.T. pg. 37 lns. 4–8). Officer Grantham stated Defendant was only 10–15 feet away from him, in plain view of him when this motion was made, and thud was heard.

(T.T. pg. 37 lns. 9–10). Officer Grantham stated there were other people in the back yard where he caught up with Defendant and that when he came around the fence the subject was stopped and Officer Grantham observed a pill bottle with pills in it on the ground at the location where he heard the thud and saw Defendant's arm extend out. At this time Officer Grantham immediately detained the subject. (T.T. pg. 37 lns. 12–25).

Officer Grantham goes on to testify that the pill bottle was only 2–3 feet from where Defendant had stopped running and was in the back yard of the neighbor of Ms. Robinson where there were several people sitting at an outdoor table. (T.T. pg. 38 lns. 1–3).

Officer Grantham never testified that he saw Defendant with the pill bottle in his possession, nor did he see what object allegedly flew from Defendant's hand making a thud when Defendant made the throwing motion, although Officer Grantham was purportedly only 10–15 feet away from Defendant at that time. Officer Grantham was in full uniform, admittedly making a lot of noise due to all the accoutrements [sic] a police officer must carry, running all out at full speed, but yet he purportedly heard the thud over all that racket, of a pill bottle said to have contained 25 pills weighing approximately 20 grams bounce off of a wooden fence.

Officer Grantham placed the pill bottle into evidence and it was presented at trial as State's Exhibit 1. There were no fingerprints identified as the Defendant's on the pill bottle resulting from FDLE lab tests.

Officer Grantham then made a video (with audio) of Defendant in front of his cruiser where Defendant stated he got out of the car and went into the house to tell Ms. Collin's [sic] mama that she had just got pulled over.

When asked about the pills, Defendant stated "No, they ain't mine." [sic], and that he did not know what was in the bottle. (T.T. pg. 43 lns. 1–12).

Defendant goes on to state on the video he left Ms. Collin's [sic] vehicle because he had an active warrant for a violation of probation from a year and a half ago.

It should be noted here that at the time of the traffic stop/traffic citation initiated by Officer Baker that the identity of the Defendant was not known to the Officers, and that Officers had no reasonable suspicion that a person within the vehicle had committed, is committing, or is about to commit a crime. Nor did Officer Baker initiate a consensual encounter or engage Defendant in a temporary detention or investigatory stop. No exigent circumstances were in existence that would support any probable cause that a crime has been or is being committed, or

lead Officer Baker to believe he was in danger or that there was a danger to the community.

On cross-examination, Officer Grantham was asked if he would normally do a perimeter check into people's back yards to which he answered that it would depend on the circumstances. (T.T. pg. 46 lns. 1–4). Again, there were no circumstances in the instant case that would justify a warrantless search of a citizen's home or property for a party which exited a car after it had been stopped for a traffic citation, or that would justify a stop and frisk weapons check, and that because the officer lacked any reasonable suspicion of criminal activity, and had no reasonable basis to fear for his safety. Therefore, it was patently unreasonable and clearly an infringement upon the Defendant's Fourth Amendment rights for Officer Grantham to follow Defendant.

On redirect examination, Officer Grantham was asked if the parking violation Officer Baker had first initiated was unusual, to which he responded that it was unusual because Officer Baker stated the passenger had immediately left the vehicle. (T.T. pg. 52 lns. 15–20). A passenger exiting this vehicle would only constitute unusual behavior to the point of further investigation if there had been some other supporting circumstances such as a BOLO issued identifying subjects in a similar year, make and model vehicle, or a complaint in the area describing criminal activity or the suspicion of future criminal activity.

(Ex. T at 3–7, 27).

In the state circuit court's written decision denying the claims, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (Ex. U at 40–41). The court adjudicated the claims as follows:

Defendant claims that counsel was deficient for failing to depose two witnesses who would have provided testimony to demonstrate that "no criminal activity was afoot" when police initially approached the parked vehicle in question to investigate a parking violation ("Ground I."). Defendant claims that counsel should have used this testimony to support a motion to suppress ("Ground II.")

In "Ground I" specifically, Defendant claims that Ms. Collins, who was in the driver's seat of the car, would have testified that she and Defendant, who was in the passenger seat of the vehicle, were not engaged in any criminal activity. Defendant further claims that Pensacola Police Officer Pearce Baker, would have testified that he had no knowledge of Defendant's identity; no reason to believe Defendant was dangerous; and that he did not have any suspicion of criminal activity when he approached the car. Defendant also alleges that Officer Baker would have testified that the only reason that he called an additional officer to the scene was because he

thought it was "unusual" that Defendant exited the vehicle and walked into the house as Officer Baker approached the vehicle. Both of Defendant's grounds for relief relate to the claim that counsel should have investigated and filed a motion to suppress, which he alleges would have resulted in the suppression of the evidence obtained after the illegal search and seizure. Defendant's claims can be addressed together.

To prove that counsel was deficient for failing to file a motion to suppress, Defendant must demonstrate that the motion would have had merit. See Johnston v. State, 63 So. 3d 730, 740 (Fla. 2011).

According to the facts supplied by Defendant in the instant motion, which are also supported by the court record, as Officer Baker approached the parked vehicle, Defendant exited the vehicle and went inside the house. At trial, Officer Christopher Grantham testified he had been called as "back up" at that time because Officer Baker had decided that it was unusual for Defendant to exit the vehicle and go in the house.[FN 2] Officer Grantham did not testify that he or Officer Baker had any suspicion of criminal activity. Officer Grantham testified that when he first arrived, Officer Baker was speaking with Ms. Collins and her grandmother, Emma Robinson, who lived at the house. Importantly, Defendant states in the instant motion that, "Officer Grantham spoke with Ms. Robinson who confirmed Defendant had entered her home and gave verbal authorization for Officer Grantham to search the premises."[ FN 3]. Next, Officer Grantham walked around the side of the house and looked into the backyard where he observed Defendant crouching against a fence, watching the police activity in the front of the house.[FN 4]. Officer Grantham further testified that when Defendant noticed him that Defendant started to run. Officer Grantham chased Defendant into a neighbor's yard where he observed Defendant throw something which made a "thud" against a fence.[FN 5] Defendant stopped running shortly thereafter and was apprehended. Officer Grantham recovered a bottle of pills where he believed Defendant had thrown something.

> The Florida Supreme Court has recognized three levels of police-citizen encounters: consensual encounters, investigatory detentions, and formal arrests. See Popple v. State, 626 So. 2d 185, 185 (Fla. 1993). An investigatory detention occurs when an officer makes "an official show of authority from which a reasonable person would conclude that he or she is not free to end the encounter and depart." Dees v. State, 564 So. 2d 1166, 1167 (Fla. 1st DCA 1990). Such a detention is proper only when a law enforcement officer has "reasonable suspicion that the person has committed or is about to commit a crime." Faunce v. State, 884 So. 2d 504, 506 (Fla. 1st DCA 2004). Otherwise, the detention violates the detainee's Fourth Amendment rights, and any evidence obtained as a result of that

detention is subject to suppression.  See Popple, 626 So. 2d at 185, 188.

Majors v. State, 70 So. 3d 655, 659 (Fla. 1st DCA 2011).

[FN 2:  See Attachment 2, trial transcript excerpts, p. 52.]

[FN 3:  The conceded consent refutes Defendant's allusions to an unjustified warrantless search of private property.]

[FN 4:  See Attachment 2, trial transcript excerpts, p. 35.]

[FN 5:  See Attachment 2, trial transcript excerpts, p. 37.]

Some of the factors a police officer may evaluate which would reasonably suggest the possibility of criminal activity are:  "The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge.  To this list may be added, the factor of flight."  Hernandez v. State, 784 So. 2d 1124, 1126 (Fla. 3d DCA 1999).

Although flight alone is not sufficient to create reasonable suspicion, "flight can be considered when there are other suspicious circumstances."  Indeed, "flight at the sight of an approaching police officer is a suspicious circumstance which, when added to other suspicious circumstances, may justify the belief that the defendant was engaged in criminal activity" warranting an investigatory stop.

Id. (quoting State v. Bell, 382 So. 2d 119 (Fla. 3d DCA 1980)).

In the instant case, as Defendant asserts, Officer Grantham was called to the scene because Officer Baker thought it was "unusual" that Defendant had exited the vehicle.  That unusual circumstance combined with Defendant's flight when he saw Office Grantham in the backyard may have created the requisite reasonable suspicion of criminal activity that would justify an investigatory stop.  However, even if reasonable suspicion did not exist to support the investigatory stop, the dispositive issue of any motion to suppress would have been whether Defendant had submitted to authority when he abandoned the pill bottle.

"An unlawful seizure only takes place if the person either willingly obeys or is physically forced to obey the police request, i.e. there is no unlawful seizure when the person 'drops then stops,' even where the drop occurs after an order to stop."

Johnson v. State, 640 So. 2d 136, 138 (Fla. 4th DCA 1994). "A person who flees from a show of authority has not been seized, while a person who remains in place and submissive to the show of authority has been seized." Hollinger v. State, 620 So. 2d 1242, 1243 (Fla. 1993).

The undisputed facts demonstrate that Defendant had not yet complied with Officer Grantham's show of authority when he threw the pill bottle. Therefore, Defendant abandoned the pill bottle prior to being seized. Accordingly, even assuming arguendo that Defendant's stop was illegal, the pill bottle would not have been subject to suppression. See State v. Battis, 926 So. 2d 427 (Fla. 2d DCA 2006) (trial court improperly suppressed cocaine that the defendant had thrown out the car window while being chased by police without reasonable suspicion). See also California v. Hodari D., 499 U.S. 621, 111 S. Ct. 1547 (1991) (even if police officer's pursuit was a show of authority, because the defendant did not comply with orders to halt, he was not seized until he was tackled and cocaine abandoned while the defendant was running was not fruit of seizure).

Hence, even if the testimony of Ms. Collins and Officer Baker would have demonstrated that Officer Grantham did not have reasonable suspicion of criminal activity to support the investigatory stop of Defendant, counsel was not deficient for failing to investigate such testimony because it would not have provided a meritorious basis for a motion to suppress. Because a motion to suppress was not warranted, counsel was also not deficient for failing to file such a motion. Consequently, Defendant is not entitled to relief on this claim.

Moreover, counsel attempted to highlight at trial that Defendant's arrest stemmed from a simple incident of a parking violation, and that no criminal activity was taking place.[FN 6] The defense also presented a neighbor [Arthur Rich] as a witness who testified that the pill bottle was his and he had a valid prescription for the pills.[FN 7] Finally, defense counsel argued in closing that because Officer Grantham admitted that he did not actually see the pill bottle in Defendant's hand, that the State had failed to prove possession.[FN 8] However, apparently the jury disagreed.

[FN 6: See Attachment 2, trial transcript excerpts, p. 46.]

[FN 7: See Attachment 2, trial transcript excerpts, pp. 71–80.]

[FN 8: See Attachment 2, trial transcript excerpts, pp. 94–96.]

(Ex. U at 41–46). Petitioner appealed this decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. Z).

In <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. 392 U.S. at 30. While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. <u>Terry</u>, 392 U.S. at 27. Individual facts capable of innocent interpretation may give rise to reasonable suspicion when viewed as a whole. <u>United States v. Arvizu</u>, 534 U.S. 266, 274–75, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). A court must review the totality of the circumstances to determine whether an officer had a "particularized and objective basis" to suspect legal wrongdoing. *Id.*, 534 U.S. at 273.

Where an officer has probable cause to believe that the driver of a vehicle has committed a traffic code violation, the officer's stop of the vehicle is reasonable under the Fourth Amendment. *See* <u>Whren v. United States</u>, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); <u>United States v. Griffin</u>, 109 F.3d 706, 708–09 (11th Cir. 1997). Once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer may question the driver about her driver's licence, registration, and insurance papers. *See* <u>United State v. Pruitt</u>, 174 F.3d 1215, 1219 (11th Cir. 1999). Once such brief questioning is completed, the driver and any other occupants are free to go, <u>Pruitt</u>, 174 F.3d at 1221, but continuing detention of the vehicle's occupants is authorized under the Fourth Amendment if the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." <u>Griffin</u>, 109 F.3d at 708 (citation omitted).

"[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (citing <u>Florida v. Royer</u>, 460 U.S. 491, 498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)). Any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." <u>Florida v. Bostick</u>, 501 U.S. 429, 437, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). However, the

Supreme Court and the Eleventh Circuit have recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *See* United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); Florida v. Rodriguez, 469 U.S. 1, 6, 105 S. Ct. 308, 83 L. Ed. 2d 165 (1984) (per curiam); Sokolow, 490 U.S. at 8–9; United State v. Gordon, 231 F.3d 750, 756–57 (11th Cir. 2000) (flight from law enforcement is a relevant factor in determining whether reasonable suspicion exists). As the Supreme Court noted in Wardlow:

> Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

528 U.S. at 124–25 (citing United States v. Cortez, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).

Here, Petitioner does not allege that Officer Baker's stop of Ms. Collins's vehicle for the parking violation was illegal. Further, Petitioner admitted that upon Officer Barker's initiating the traffic stop of the vehicle, Petitioner did not simply refuse to cooperate; instead, he immediately exited the vehicle and walked away into Ms. Robinson's house (*see* Ex. T at 3, Ex. B at 42–43). Then, when Officer Grantham went into Ms. Robinson's back yard (with her consent), he observed Petitioner crouching near the fence, watching the police activity in the front of the house. Upon Officer Grantham's merely approaching Petitioner, he fled headlong, and he threw the pill bottle during his flight. Given these circumstances, it was not unreasonable for defense counsel to conclude that Petitioner's behavior provided the officers reasonable suspicion to investigate further. *See* Wardlow, 528 U.S. at 125; United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (defendant's walking quickly away from illegal gambling activity when officers approached may be considered in the totality of the circumstances); *see also, e.g.*, United States v. Knight, 336 F. App'x 900, 904 (11th Cir. 2009) (unpublished but recognized for persuasive authority) (suspect's dropping concealed weapon during flight provided officer with sufficient probable cause to pursue and arrest him); United States v. Hires, 282 F. App'x 771, 773 (11th Cir. 2008) (unpublished) (where officer believed that car's license tag did not comply with statutory requirements and thus

was justified in conducting <u>Terry</u> stop of car, and defendant jumped out of the car before it was fully stopped and began to flee, officer then had reasonable suspicion to detain defendant, as unprovoked flight may serve as the basis for a reasonable suspicion that the person fleeing is involved in criminal activity; accordingly, subsequent detention did not infringe defendant's Fourth Amendment rights); <u>Doles v. Crews</u>, No. 5:11cv164/RS/CJK, 2013 WL 2318325, at *10–12 (N.D. Fla. May 28, 2013) (unpublished).

Additionally, as the state court found, the undisputed facts demonstrate that at the time Petitioner threw the pill bottle, he had not yet complied with Officer Grantham's show of authority and thus had not been "seized" for purposes of the Forth Amendment. *See* <u>California v. Hodari D.</u>, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) (absent the use of physical force, a seizure requires both a show of authority and "submission to [that] assertion of authority"); <u>United States v. Franklin</u>, 323 F.3d 1298, 1301 (11th Cir. 2003) (defendant was "seized," as defined by the Fourth Amendment, when officer caught and tackled him as he climbed a fence to escape). The pill bottle, abandoned while Petitioner was running, was not the fruit of a "seizure"; therefore, a motion to suppress the bottle and its contents would not have been properly granted. *See* <u>Hodari</u>, 499 U.S. at 629 (because the defendant abandoned the cocaine while he was running from officer, which occurred prior to the officer's tackling, i.e., "seizing" him, trial court properly denied defendant's motion to suppress evidence of the cocaine); <u>United States v. Tinoco</u>, 304 F.3d 1088, 1117 (11th Cir. 2002) (when individuals abandon contraband during a chase with law enforcement, they have no expectation of privacy to challenge seizure of the property); *see also* <u>State v. Battis</u>, 926 So. 2d 427 (Fla. 2d DCA 2006) (trial court improperly suppressed cocaine that the defendant had thrown out the car window while being chased by police without reasonable suspicion); *see also, e.g.*, <u>United States v. Dolomon</u>, 569 F. App'x 889, 892–93 (11th Cir. 2014) (firearm that defendant discarded during flight from police officers was not fruit of unlawful seizure, and thus was admissible at trial for being a felon in possession of a firearm; defendant was not actually seized—despite officers' earlier attempt to contain defendant's vehicle at traffic light—until after he had discarded the firearm).

The state court reasonably concluded that Petitioner failed to establish a meritorious basis for a motion to suppress the pill bottle and its contents, and that he thus failed to establish that trial

counsel was ineffective for failing to investigate the Fourth Amendment issue or file a motion to suppress. Therefore, Petitioner is not entitled to federal habeas relief on Grounds One and Ground Two.

B.    Ground "A"[5]:  "Ineffective assistance of counsel."

Ground "X":  "Appellate counsel was ineffective for not arguing trial counsel's omission of 'lack of possession' defense where mere proximity to the bottle of pills was not sufficient to establish possession."

In Ground "A," Petitioner claims that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to present a defense of lack of possession of the hyrdocodone (ECF No. 20 at 8). In Ground "X," he contends trial counsel was well aware that the State intended to prove actual/constructive possession; however, he made no genuine effort to present evidence or argument to counter the State's position (*id.* at 15).

Respondent concedes Petitioner exhausted these claims by raising them as Issues Eleven and Twelve in his state habeas petition alleging ineffective assistance of appellate counsel ("IAAC") (ECF No. 31 at 44–45, 83–86). Respondent argues that under Florida law, claims of ineffective assistance of trial counsel ("IATC") are more appropriately raised in a Rule 3.850 motion; therefore, appellate counsel's failure to raise an IATC claim on direct appeal was not ineffective (*id.* at 45–53). Respondent contends that the First DCA's denial of Petitioner's IAAC claims was not contrary to or an unreasonable application of Strickland (*id.* at 45–53, 83–86).

1.    Clearly Established Federal Law

The standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland, 466 U.S. at 668. *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) (citation omitted). As previously discussed, the two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not

---

[5] The court identifies Petitioner's claims in the manner he identified them in his third amended petition.

(and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir.1988)).

2.    Federal Review of State Court Decision

Petitioner raised these IAAC claims as Issues Eleven and Twelve in state habeas petition (Ex. DD at 5–6). In Issue Eleven, he argued that mere proximity to the pill bottle was not sufficient to establish that he had exclusive control of it, because other persons were in the area (*id.* at 8). Petitioner alleged that defense counsel "knew that the state intended to prove actual/constructive possession by alleging that petitioner knew the contents of the bottle contained a controlled substance, and that petitioner had control exclusively by mere proximity" (*id.*). Petitioner alleged that defense counsel made no genuine effort to present evidence whether through cross-examination or calling of witnesses (*id.*).

In Issue Twelve of his state habeas petition, Petitioner alleged that he was one of ten people in the area where the pill bottle was found (Ex. DD at 9). He alleged that trial counsel knew the

State intended to use inferences to prove Petitioner's exclusive possession of the pill bottle, but counsel made no attempt to object to these references during Officer Grantham's testimony or during the State's closing arguments, or prepare lines of questions as to Officer Grantham's testimony (*id.*). Petitioner alleged that trial counsel's failure to present a defense was an unreasonable omission which no competent attorney would have made (*id.*).

In both grounds, Petitioner alleged that appellant counsel's failure to argue these IATC claims was an unreasonable omission which no competent appellate attorney would have made (Ex. DD at 8–9). He alleged that as a result of appellate counsel's omission, he was denied his constitutional right to effective appellate counsel (*id.*). Petitioner alleged that had this omission not been committed, his direct appeal would have been reversed (*id.*).

The First DCA denied the state habeas petition on the merits, without further explanation (Ex. EE). "[T]he summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002). Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* Richter, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 562 U.S. at 102; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Generally, under Florida law, IATC claims are not cognizable on direct appeal but are more appropriately raised in a motion for postconviction relief. In Smith v. State, 998 So. 2d 516 (Fla. 2008), the Florida Supreme Court explained the proper procedure for presenting IATC claims:

> Claims of ineffective assistance of trial counsel are usually presented in a postconviction motion under Florida Rule of Criminal Procedure 3.850. Under that rule, the circuit court can be specifically presented with the claim, and apply the Strickland standard with reference to the full record and any evidence it may receive

in an evidentiary hearing, including trial counsel's testimony. Thus, ineffective assistance claims are not usually presented to the judge at trial, and we have repeatedly stated such claims are not cognizable on direct appeal. E.g., Martinez v. State, 761 So. 2d 1074, 1078 n.2 (Fla. 2000) ("With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal."); McKinney v. State, 579 So. 2d 80, 82 (Fla. 1991) ("Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief."); Kelley v. State, 486 So. 2d 578, 585 (Fla. 1986) (same); State v. Barber, 301 So. 2d 7, 9 (Fla. 1974) (holding that claims of ineffective assistance of counsel "cannot properly be raised for the first time on direct appeal" because the trial court has not previously ruled on the issue). We recognize that "[t]here are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." Blanco v. State, 507 So.2d 1377, 1384 (Fla. 1987); see also Gore v. State, 784 So. 2d 418, 437–38 (Fla. 2001) ("A claim of ineffective assistance of counsel may be raised on direct appeal only where the ineffectiveness is apparent on the face of the record."); Mansfield v. State, 758 So. 2d 636, 642 (Fla. 2000) (same). Thus, in the rare case, where both prongs of Strickland—the error and the prejudice—are manifest in the record, an appellate court may address an ineffective assistance claim.

Smith, 998 So. 2d at 522–23.

As suggested in Smith, those rare instances where direct review of ineffective assistance claims will be available, have been quite well delineated by case law. The Florida cases demonstrate that the appropriate forum for factual development of such claims is almost always the trial court, not the appellate court. Moreover, a review of these cases demonstrates the qualitative distinction between those cases eligible for direct review, and those reserved for collateral attack. *Compare* Kidd v. State, 978 So. 2d 868, 869 (Fla. 4th DCA 2008) (holding that defendant's claims of ineffective assistance of counsel were not cognizable on direct appeal, where such claims were not apparent on the face of the record; defendant claimed counsel was ineffective for allowing the State to introduce inadmissible hearsay in the form of prior testimony of an unavailable witness even though the State failed to prove the unavailability of the witness; however, the record showed that trial counsel did not simply fail to object, rather, counsel and defendant discussed the matter and decided for their own reasons to allow the State to admit the testimony uncontested), *and* Criner v. State, 943 So. 2d 224, 226 (Fla. 1st DCA 2006) (same, where defendant's ineffective assistance

claims concerned strategic decisions made by defense counsel), *and* <u>Burgess v. State</u>, 776 So. 2d 1035, 1036 (Fla. 4th DCA 2001) (same, where defendant argued his attorney should have moved to suppress the victim's identification of him at a live post-information, pre-trial lineup because he did not have counsel present; however, the record did not clearly show that defendant was unrepresented by counsel at the lineup), *with* <u>Foster v. State</u>, 387 So. 2d 344, 345–46 (Fla. 1980) (reversing conviction on direct appeal where record demonstrated counsel's representation was impaired by conflicting interests—court-appointed attorney jointly represented defendant and a state witness who testified against defendant), *and* <u>Ross v. State</u>, 726 So. 2d 317, 319 (Fla. 2d DCA 1998) (addressing ineffective assistance claim on direct appeal where record revealed counsel failed to object to prosecutor's inappropriate and prejudicial comments during closing argument—prosecutor repeatedly bolstered arresting officer's credibility, attacked and ridiculed defendant (characterizing his testimony as "preposterous," "nonsense," and "bologna"), and attacked and ridiculed defense witnesses (describing them as "pathetic," "ridiculous," "inappropriate," "insulting" to the jury's intelligence, "totally incredible," and as having "just flat out" lied), *and* <u>Gordon v. State</u>, 469 So. 2d 795, 797 (Fla. 4th DCA 1985) (addressing ineffective assistance claim on direct appeal where the record revealed defense counsel failed to object to 104 instances of improper questions and comments by the prosecutor).  In the cases allowing direct review, the appellate court suffered no inability to glean all necessary facts from the trial court record.  Simply put, the same may not be said here.

The trial transcript demonstrates that defense counsel presented the theory that the pill bottle belonged to Mr. Rich, and that Petitioner had no knowledge of the bottle and was never in actual, constructive, or exclusive possession of it (*see* Ex. B).  Trial counsel thoroughly cross-examined Officer Grantham on this point, and elicited testimony that there were other people in the yard where he apprehended Petitioner, and that the fingerprint lifted from the pill bottle did not match Petitioner's (*see id.* at 45–52, 55–56).  Additionally, counsel presented the testimony of Mr. Rich that he owned the pill bottle; that prior to Petitioner's being chased by Officer Grantham, he (Rich) had placed the pill bottle on top of the fence where Petitioner was eventually apprehended; that there were several people in the back yard when Petitioner was apprehended; that he saw Petitioner shove where he (Rich) had put his pill bottle on the fence; and that after Petitioner was apprehended, he

saw that the officers had his pill bottle (*id.* at 71–76, 86–88).  Trial counsel even admitted into evidence a prescription from Mr. Rich for the very medication, hydrocodone, found in the pill bottle in question (*id.* at 78–79).  In closing argument, trial counsel argued:

> Now, we have an FDLE report, we have the bottle there and they say it's hydrocodone.  The one thing they can't prove is that Jackie Lige possessed that bottle of Lortabs, hydrocodone.  When you hear the officer say, and I got him to come down here and in front of you and he said Mr. Lige had his hands on his knees.  He didn't say anything was in his hands, there was no pill bottle in his hands.  The first time you ever heard that Mr. Lige reached into his pocket and threw something out was from the state attorney's closing argument and that's not evidence, . . . .
> . . . .
> Members of the jury, it's just not there.  The State hasn't met their burden.  As a matter of fact, it's pretty clear that Jackie Lige did not possess that bottle of Lortab/hydrocodone that day.  That's pretty clear.  The State certainly hasn't met their burden of proof in this case.

(Ex. B at 94–96).

It was reasonable for appellate counsel to conclude that it was not apparent on the face of the trial record that trial counsel was ineffective for failing to present a defense of lack of possession.[6]  Further, Petitioner failed to show a reasonable probability that appellate counsel's failure to raise this IATC claim affected the outcome of the appeal.  Therefore, the First DCA's rejection of Petitioner's IAAC claim was not contrary to or an unreasonable application of Strickland.  Accordingly, Petitioner is not entitled to federal habeas relief on Ground "A" or Ground "X."

   C.    Ground "B":  "Ineffective assistance of counsel."

Petitioner claims that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to present testimony from a fingerprint expert that the fingerprint on the pill bottle did not match Petitioner's (ECF No. 20 at 10).

Respondent concedes Petitioner exhausted this claim by raising it as Issue Thirteen in his state habeas petition alleging IAAC (ECF No. 31 at 54–56).  Respondent contends the state court's

---

[6] Appellate counsel did challenge on direct appeal the trial court's denial of defense counsel's motion for judgment of acquittal (Ex. F).  Appellate counsel argued that the State failed to present sufficient evidence of possession to create a jury question, and did not rebut the defense's evidence that the pills belonged to a third party with a valid prescription (*id.*).

adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

          1.       Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

          2.       Federal Review of State Court Decision

Petitioner raised this claim as Issue Thirteen in state habeas petition (Ex. DD at 9–10).  The First DCA denied the petition on the merits, without further explanation (Ex. EE).

The trial transcript demonstrates that defense counsel elicited testimony from Officer Grantham that a latent fingerprint was removed from the pill bottle and sent to the FDLE for testing (Ex. B at 51–52).  Counsel also elicited testimony that the FDLE report stated that the latent fingerprint did not match Petitioner's (*id.*).

It was reasonable for appellate counsel to conclude (1) that trial counsel's failure to present testimony from a fingerprint expert was not unreasonable, given the testimony as to the FDLE report, and/or (2) that there was no reasonable probability of a different outcome at trial if counsel had presented testimony from a fingerprint expert.  Further, Petitioner failed to show a reasonable probability that he would have prevailed on direct appeal if appellate counsel had raised this IATC claim.  Therefore, the First DCA's rejection of Petitioner's IAAC claim was not contrary to or an unreasonable application of Strickland.  Accordingly, Petitioner is not entitled to federal habeas relief on Ground "B."

        D.     Ground "III":  "Appellate counsel was ineffective for failing to argue abuse of discretion when the trial court prevented arresting officer (Grantham) from testifying regarding the same contents of an F.D.L.E. report he utilized to refresh his memory regarding a question of 'matched prints' and 'comparison matched prints.'"

Petitioner alleges the trial court permitted Officer Grantham to refresh his recollection with an FDLE report to testify that a latent fingerprint was removed from the pill bottle, and that the FDLE report indicated that the fingerprint did not match Petitioner's (ECF No. 20 at 11–12).  He alleges the trial court did not permit defense counsel to question Officer Grantham about the actual fingerprint "comparison," but the court permitted the State to question Grantham about a fingerprint "match" (*id.* at 12).

Respondent concedes Petitioner exhausted this claim by raising it as Issue One in his state habeas petition (ECF No. 31 at 57–61). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

    1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

    2.      Federal Review of State Court Decision

Petitioner raised this IAAC claim as Issue One in his state habeas petition (Ex. DD at 3). The First DCA denied the petition on the merits, without further explanation (Ex. EE).

The trial transcript shows that on direct examination, the prosecutor elicited the following testimony from Officer Grantham regarding fingerprints from the pill bottle:

> Q.      Do you know if that pill bottle was submitted for fingerprint testing?
>
> A.      Yes, it was.
>
> Q.      Do you know the results of that testing? Were any fingerprints taken from it?
>
> A.      No, there was not.

(Ex. B at 39–40).

Defense counsel cross-examined Officer Grantham regarding the fingerprints as follows:

> Q.      And you submitted it [the pill bottle] for fingerprints?
>
> A.      It was submitted for fingerprints.
>
> Q.      How does that process work? Do you give them to somebody in your department for fingerprints?
>
> A.      I'm not sure the logistics of it. I know we have a crime scene, but I believe in this case it got sent off to FDLE.
>
> Q.      Why did it get sent off to FDLE?
>
> A.      Once, again, logistics would be able to explain that all to you. I couldn't explain it.

Q.      There was a print on it, wasn't it [sic]?  That's the reason it goes to FDLE, to see if it matches somebody, particularly Mr. Lige, is that right?

A.      That I would not be able to tell you, sir.

Q.      Y'all do the fingerprints right there in your office, don't you?

A.      We do fingerprints.

Q.      And if you find something, then you send it off to FDLE, Florida Department of Law Enforcement, right?

A.       And FDLE also tests the drugs to make sure it is what it is.

Q.      Not drugs.  I'm talking about the fingerprints.

A.      Right.

Q.      When you get a latent lift, you send it off to FDLE to see if it matches Mr. Lige's fingerprint card, isn't that what you do?

A.      You're speaking logistics.  I wouldn't know. I just turn it in.

Q.      This was sent to FDLE, right?

A.      Yes, I believe it was.

Q.      And you were the lead investigator; is that right?

A.      I was the arresting officer.

MR. BAYHI [defense counsel]:  May I approach the witness, Your Honor?

THE COURT:  You may.

Q.      Officer Grantham, I'm going to ask you to read this to see if this refreshes your memory on anything concerning the fingerprints on that bottle.

A.      Okay.

Q.      Officer, does that refresh your memory on the fingerprint process on this bottle?

A.      Well, that's the first time I observed that report right there, but I understand the process.

Q.      That is a report on this case, right?

A.      Yes.

Q.      And there was a positive latent print on that bottle, wasn't there?

A.      According to what you showed me there, there was a latent print sent off for processing, yes, sir.

Q.      There was no match of Mr. Lige, is there, from FDLE?

A.      No, sir.

(Ex. B at 50–52).

On re-direct examination, the prosecutor asked Officer Grantham, "[W]as there a match to anybody?" (Ex. B at 52).  Grantham answered, "No, there was not." (*id.*).

Defense counsel then conducted a re-cross examination:

Q.      Officer Grantham, when this latent print was sent off to FDLE, there was no match, is that right?

A.      Correct.

Q.      No comparison match, is that right?

MR. LUONGO [the prosecutor]:  Objection.

THE COURT:  It's repetitive, number one; and number two, I think it's beyond the scope of the redirect.

MR. BAYHI:  Your Honor, I think I can tie it up here.

THE COURT: I will give you just a little bit of leeway, but keep it within the scope of the redirect, please.

Q. (By Mr. Bayhi)  You had Mr. Lige as a suspect, is that correct?

A.      At what point, sir?

Q.     When he got arrested he was a suspect.  You said on the video he threw the pill bottle?

A.     Yes, sir.

Q.     And those were what was compared to with the print that was lifted off the bottle, is that right, Mr. Lige's prints?  Is that right?

MR. LUONGO:  Objection.

THE COURT:  Counsel, approach the bench.

(At the bench:

THE COURT:  Mr. Bayhi, are you going to present evidence that he did the comparison?

MR. BAYHI:  No.

THE COURT:  The only way he would know is what someone else told him. It doesn't sound much different than your hearsay objection, does it?  I will sustain the objection.

(Bench conference concluded)

THE COURT:  The objection is sustained.  Do you have any other questions?

MR. BAYHI:  No, sir.

(Ex. B at 55–56).

The alleged trial court error (i.e., the trial court's limiting defense counsel's questioning of Officer Grantham regarding the comparison of Petitioner's fingerprints with the fingerprint lifted from the pill bottle) was not preserved for appellate review, because defense counsel did not proffer the testimony he sought to elicit from Officer Grantham or advise the court of what the testimony would show; and the substance of that testimony was not apparent from the record.  *See* Fla. Stat. § 90.104(1)(b) (to preserve the preclusion of evidence for appellate review, counsel must make an offer of proof of how the witness would have responded if allowed to answer the question); Murray v. State, 3 So. 3d 1108, 1117 (Fla. 2009) (argument that defense counsel's cross-examination of FBI hair and fiber expert was improperly limited, as to two investigations of the FBI laboratory, was not

preserved for appeal; even though defense counsel asked judge outside presence of jury if he could pursue questioning as to investigations and judge denied request, defense counsel did not object or attempt to proffer what evidence his inquiry into the investigations would reveal); Morrison v. State, 818 So. 2d 432, 448 n.8 (Fla. 2002) (when a trial court excludes testimony due to an objection, the proponent of the excluded testimony must make a formal proffer to preserve any rights on appeal); Pearlman v. State, 157 So. 3d 454, 454–55 (Fla. 4th DCA 2015); Arrascue v. State, 42 So. 3d 927, 929 (Fla. 5th DCA 2010) (defendant failed to preserve for appellate review his claim that trial court improperly limited his cross-examination of the victim, where defendant did not proffer the desired cross-examination and secure a ruling, but rather elected to forgo his desired cross-examination as to a number of topics, such that it was impossible to determine whether trial court's ruling was erroneous and, if erroneous, what effect the error might have had on the result.). *Cf.* Holley v. State, 48 So. 3d 916, 920 (Fla. 4th DCA 2010) (defendant sufficiently preserved issue of trial court's limitation on defense counsel's cross-examination, where, even though defendant did not proffer the questions to be asked, defendant advised the court that the questions would show the witness's motive, bias, and lack of trustworthiness).

Moreover, it was reasonable for appellate counsel to conclude that the alleged trial court error did not amount to "fundamental error" so as to warrant appellate consideration. The jury heard evidence that the FDLE determined that the fingerprint lifted from the pill bottle did not match Petitioner's. Therefore, it was reasonable for appellate counsel to conclude that the trial court's limiting testimony regarding the actual process of fingerprint comparison was not "of the magnitude that would have prevented the jury from reaching a fair and impartial verdict." *See* Robinson v. State, 498 So. 2d 626, 628 (Fla. 1st DCA 1986) (citing White v. State, 446 So. 2d 1031, 1034 (Fla. 1984)).

Petitioner failed to demonstrate that the First DCA's rejection of this IAAC claim was contrary to or an unreasonable application of Strickland. Accordingly, Petitioner is not entitled to federal habeas relief on Ground "III."

E.     Ground "IV": "Appellate counsel was ineffective for not arguing an abuse of discretion when it [sic] declared that petitioner invoked the 'lack of knowledge defense' as a basis for over-ruling an objection."

Ground "VI":  "Appellate counsel was ineffective for not arguing an abuse of discretion when the trial court allowed the state to intentionally mis-quote testimony that the actual owner of the pills in question stood by and watched petitioner get arrested for those pills."

Petitioner claims that appellate counsel should have argued on direct appeal that the trial court abused its discretion by overruling defense counsel's objection to the prosecutor's comments during closing argument (ECF No. 20 at 12, 13).  Petitioner alleges the prosecutor mischaracterized Mr. Rich's testimony, and defense counsel objected.  He alleges the trial court not only erred by overruling defense counsel's objection, but relied upon an erroneous basis for doing so.

Respondent concedes Petitioner exhausted both of these claims by raising them as Issues Two and Three in his state habeas petition (ECF No. 31 at 62–66, 70–73).  Respondent contends the state court's adjudication of the claims was not contrary to or an unreasonable application of clearly established federal law (*id.*).

       1.       Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

       2.       Federal Review of State Court Decision

Petitioner raised these claims as Issues Two and Three in his state habeas petition (Ex. DD at 3–5).  The First DCA denied the petition on the merits, without further explanation (Ex. EE).  In support of these claims, Petitioner argued the following:

> ISSUE TWO:  Whether appellate counsel was ineffective for not arguing an abuse of discretion when Judge Allen allowed the state to intentionally mis-quote testimony that Mr. Rich stood by and watched petitioner get arrested for some elses [sic] pills in violation of the 5th, 6th, and 14th Amendments to the United States Constitution.

> Petitioner argues that the state knew he made a mis-quote of Mr. Rich's testimony, and that Judge Allen helped bolster this mis-quote by overruling petitioner's objection thereby sending a mixed message to the jury who could not play back testimony regarding what Mr. Rich thought petitioner's reason for arrest had been other than for an outstanding warrant.  Judge Allen ruled that the state made a legitimate argument claiming Mr. Bayhi's defense was that the state could not prove possession with knowledge of contents (T94, L18–24), and that Mr. Rich testified the pills were his.  (T99, L10–14).  However, Mr. Bayhi objected to this misinterpretation that Mr. Rich watched petitioner being arrested for the pill bottle.  (T98, L23–24).  On cross, Mr. Rich was treated as a hostile witness, thereby being

forced to answer yes or no. (T85, L6–8). The state also knew Mr. Rich did not see the pill bottle fall from the fence, nor did Mr. Rich see Grantham pick the pill bottle up, (T86, L1–13) and the state knew Mr. Rich thought petitioner was being arrested for an outstanding warrant. (T86, L14–17). If Mr. Rich did not see the bottle fall, nor see Grantham pick it up, how could Mr. Rich have known the bottle on top of the police car was Mr. Rich's bottle. No evidence is in the record to show distance, or the contents of the bottle in which to give Mr. Rich the belief that—that was his medication, not until Mr. Rich found out later that day his bottle was missing. Appellate counsel's failure to raise an abuse of discretion claim on direct appeal was an unreasonable decision where no reasonable competent counsel would not have addressed it because collateral review was inappropriate. As a result of appellate counsel's omission, petitioner has been denied his constitutional right to a fair trial where the state bolstered the evidence. Had this omission not been committed, petitioner's direct appeal would have resulted in a reversal.

ISSUE THREE: Whether appellate counsel was ineffective for not arguing an abuse of discretion when Judge Allen mis-stated petitioner as invoking the lack of knowledge defense as Judge Allen's basis for over-ruling trial counsel's objection in violation of the 5th, 6th, and 14 Amendments to the United States Constitution.

Mr. Bayhi never declared a lack of knowledge defense. (T99, L10–14). The state did not prove the pills were not Mr. Rich's (T88, L3–14), who had a valid prescription (T78, L20–25), who had lost them in the area petitioner was detained, and who had not recovered the pills prior to trial. (T87, L1–17). Judge Allen based his decision on the grounds that Mr. Bayhi had declared a lack of knowledge defense. (T99, L10–14). Closing arguments are not testimony or evidence (T90, L2–8), nor can a defense be established at that time. The closest Mr. Bayhi came to claiming the pills were not petitioner's (T96, L10–14) is when a comment was made that the state had not met their burden concerning that Mr. Rich's home was next door to Ms. Robinson's (T95, L14–15), and the incident took place in the presence of ten other people. (T84, L2–11 and T95, L17–20). Petitioner could not declare the pills were not his without taking the stand. Petitioner compares this portion with when the state argued that petitioner had the bottle in petitioner's pocket (T91, L17–19). Mr. Bayhi never asked the jury to consider that the pills belonged to someone else. Appellate counsel's failure to raise an abuse of discretion claim on direct appeal was an unreasonable omission where no competent counsel would not have addressed it, because collateral review would be inappropriate. As a result of appellate counsel's omission, petitioner had been denied his constitutional right to a fair trial where the state bolstered the evidence. Had this omission not been committed, petitioner's direct appeal would have resulted in a reversal.

(Ex. DD at 4–5).

The trial transcript demonstrates that during closing argument, defense counsel argued that the State could not prove that Petitioner possessed the bottle of pills (Ex. B at 94–96).  Counsel further argued that Mr. Rich's testimony made sense (*id.*).  The prosecutor responded to defense counsel's argument as follows:

> We also heard Mr. Bayhi [defense counsel] say that Arthur Rich's testimony makes sense.  Everything lines up, it makes sense.  Let's take a closer look at what Arthur Rich testified to.  Obviously he has some medical conditions that he takes medications for, six that I listed off and he mentioned that he takes others as well.  He has to go to the pharmacy to get those prescriptions.  They are all in pill form.  They are all in pill bottles.  He says he rips off the labels of all the narcotics, even though he has to take them every day, they may look similar, and he has to take different quantities.  Does that make sense?  If you have all of these pills to take, you're going to go ahead and rip the labels off the pill bottles and not know which ones to take and how many to take every day?  That doesn't make sense.

> He also said that he put the bottle on top of the fence.  Does that make sense?  Is this a medicine cabinet outside on top of this fence?  It's not.  It doesn't make sense.  Why would you put a pill bottle on top of a fence when there's a lot of people?  There's no reason to do that because it didn't happen.  It's not a medicine cabinet.  It's not where you keep your medication.  I do understand that he said he keeps them in his pocket, he keeps the medication in his pocket.  So if his story is true, and you know what, he decided that's where he wants to keep his medications, why was there only one bottle found?  If he takes six different medications, six different bottles, why was there only one there?  It was because it's not his, it's the defendant's.  It's the defendant's bottle when he went around the fence and threw it, when Officer Grantham was ten to fifteen feet away and heard it hit the fence, when Officer Grantham found it five feet away from where the defendant was standing, after he stopped running, after he got rid of those drugs.  I asked Mr. Rich, did you see them arresting the defendant?  He said yeah.  Why wouldn't you go talk to them and say those are my pills if those were your pills?  No answer.  Well, did you go in later that day and tell them that those were your pills?  No, I didn't do anything.  So if his story is true, then he just watched an innocent man get arrested for his pills.

> MR. BAYHI:  Objection, that's not the evidence that we heard today.

> THE COURT: Approach the bench.

> (At the bench:

> THE COURT: You need to avoid speaking objections.  It's closing argument.  That's a legitimate argument for him to make.  I will overrule the objection.

MR. BAYHI: The evidence said he knew there was a warrant. That's what Rich said.

THE COURT: It's a legitimate argument because you argued that they were not his—that the State hadn't shown that they were his pills and the gentleman said it was his pills, so it was a legitimate argument for the State to make.

(Bench conference concluded)

(Ex. B at 97–99).

A prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper. *Id.* at 1507. Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it, and the impermissible practice of arguing suggestions beyond the evidence. *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted). The prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury. *See* White v. State, 377 So. 2d 1149 (Fla. 1980). Additionally, prosecutorial comment upon a general lack of defense evidence is permissible. *See* Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981).

When the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper. United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted). Likewise, a prosecutor may reply to remarks, comments or assertions made by defense counsel. *See* United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own

remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law." Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)). Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied: (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair. *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987).

Appellate counsel reasonably concluded that the prosecutor's comments, even if improper, did not render Petitioner's trial fundamentally unfair. Further, Petitioner failed to show a reasonable probability that he would have prevailed on appeal if appellate counsel had argued that the trial court erred by overruling defense counsel's objection to the prosecutor's comments during closing argument. The First DCA's denial of this IAAC claim was not contrary to or an unreasonable application of Strickland. Therefore, Petitioner is not entitled to relief on Grounds "IV" or "VI."

      F.      Ground "V": "Appellate counsel was ineffective for not arguing trial counsel's failure to object to the states [sic] reference to evidence not in the record."

Petitioner alleges the prosecutor argued during closing arguments that Petitioner removed a pill bottle from his pocket; however, Officer Grantham never testified that he thought the pill bottle was in Petitioner's pocket the entire time (ECF No. 20 at 13).

Respondent concedes Petitioner exhausted this claim by raising it as Issue Four in his state habeas petition (ECF No. 31 at 66–69). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

      1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.     Federal Review of State Court Decision

In Issue Four of Petitioner's state habeas petition, he argued that appellate counsel was deficient for failing to argue that trial counsel was ineffective for failing to object to the prosecutor's comment during closing argument, that Petitioner removed the pill bottle from his pocket (Ex. DD at 5).  The First DCA denied the claim on the merits (Ex. EE).

During closing argument, the prosecutor argued, "Why did he [Petitioner] decide to stop running?  It's because he got rid of the pills that were in his pocket and he thought he was home clear." (Ex. B at 91).  Although there was no evidence that the pill bottle was in Petitioner's pocket, there was evidence that as Petitioner ran around the fence and to the left, Officer Grantham saw him extend his left arm, and Officer Grantham heard an object hit the fence (Ex. B at 37).  Further, although defense counsel did not interpose an objection to the prosecutor's comment at the time it was made, counsel did challenge the comment in his subsequent closing argument by stating:

> The first time you ever heard that Mr. Lige reached into his pocket and threw something out was from the state attorney's closing argument and that's not evidence, ladies and gentlemen of the jury.  The evidence came from this witness stand, the testimony of the officer and the exhibits that you will see.
> . . . .
> Like I said, the first time we ever heard that he reached into his pocket and threw them out was in the [S]tate's closing argument.  You didn't hear Officer Grantham say that.  Members of the jury, it's just not there.  The State hasn't met their burden.  As a matter of fact, it's pretty clear that Jackie Lige did not possess that bottle of Lortab/hydrocodone that day.  That's pretty clear.  The State certainly hasn't met their burden of proof in this case.

(Ex. BB at 94–96).

Even if the prosecutor's comment was improper, it was reasonable for appellate counsel to conclude that the isolated comment did not render Petitioner's trial fundamentally unfair, therefore, it was not apparent on the face of the trial record that trial counsel was ineffective for failing to object to the comment.  Petitioner failed to demonstrate that the First DCA's denial of this IAAC claim was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal habeas relief on Ground "V."

G.     <u>Ground "VII":  "Appellate counsel was ineffective for not arguing trial counsel's failure to object to the state's bolstering of the evidence concerning how many bottles of pills the owner of the pills had as opposed to how many were on a fence pole."</u>

The entirety of Petitioner's argument is the following, "This was an obvious abuse of discretion which should have been argued." (ECF No. 20 at 14).

Respondent concedes Petitioner exhausted this claim by raising it as Issue Six in his state habeas petition (ECF No. 31 at 73–76). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

        1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

        2.      Federal Review of State Court Decision

In Issue Six of Petitioner's state habeas petition, he claimed that appellate counsel was deficient for failing to argue that trial counsel was ineffective for failing to object to the State's emphasizing during closing argument that Mr. Rich placed only one of his six pill bottles on the fence (Ex. DD at 6). Petitioner argued that trial counsel should have objected to the prosecutor's argument, on the ground that the prosecutor was commenting on facts not in evidence (*id.*). The First DCA denied the claim on the merits (Ex. EE).

During closing argument, the prosecutor made the following comment:

> So if his [Mr. Rich's] story is true, and you know what, he decided that's where he wants to keep his medications, why was there only one bottle found? If he takes six different medications, six different bottles, why was there only one there? It was because it's not his, it's the defendant's.

(Ex. B at 98). This comment was proper argument on the credibility of Mr. Rich's testimony. Therefore, it was reasonable for appellate counsel to conclude that trial counsel was not ineffective for failing to object to the argument. Further, Petitioner failed to demonstrate a reasonable probability that he would have prevailed on direct appeal if appellate counsel had presented this IATC claim.

The First DCA's denial of this IAAC claim was not contrary to or an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to federal habeas relief on Ground "VII."

      H.    <u>Ground "VIII": "Appellate counsel was ineffective for not arguing trial counsel not [sic] presenting a defense regarding 'slits' in a wooden fence through which arresting officer 'viewed' petitioner during events."</u>

Petitioner alleges only the following in support of this claim: "The slits in the fence were not manufactured or purposely 'built in,' but instead were weathered or damaged and not uniform in their presence in the fence. This was an obvious abuse of discretion which should have been argued." (ECF No. 20 at 14).

Respondent concedes Petitioner exhausted this claim by raising it as Issue Seven in his state habeas petition (ECF No. 31 at 76–78). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

In Issue Seven of Petitioner's state habeas petition, he claimed that appellate counsel was deficient for failing to argue that trial counsel was ineffective for failing to cross-examine Officer Grantham regarding slits in the fence (Ex. DD at 6). Petitioner alleged that Grantham testified that the wooden fence was manufactured with slits, which enabled him to view Petitioner at all times (*id.*). Petitioner argued that trial counsel should have cross-examined Grantham regarding the slits, and if counsel had done so, the evidence would have shown that the slits were not manufactured, but were "like weathered cracks" (*id.*). The First DCA denied Petitioner's IAAC claim on the merits (Ex. EE).

It is not apparent from the face of the trial record that either (1) trial counsel was deficient for failing to challenge Officer Grantham on the issue of whether the slits in the fence were the result of manufacturing or weathering, or (2) that there is a reasonable probability the result of the trial would have been different if trial counsel had cross-examined Grantham on the slit issue. Therefore, appellate counsel was not ineffective for failing to raise the IATC claim on direct appeal.

Petitioner failed to demonstrate that the First DCA's denial of this IAAC claim was contrary to or an unreasonable application of <u>Strickland</u>. Therefore, he is not entitled to federal habeas relief on Ground "VIII."

    I.    <u>Ground "VIX": "Appellate counsel was ineffective for not arguing trial counsel's failure to present a defense regarding the arresting officer's testimony that he 'heard a thud' 10–15 feet in front of him (the pill bottle) while running full-force and fully loaded w/ equipment."</u>

The entirety of Petitioner's argument is the following, "This was an obvious abuse of discretion which should have been argued." (ECF No. 20 at 14–15).

Respondent concedes Petitioner exhausted this claim by raising it as Issue Ten in his state habeas petition (ECF No. 31 at 78–82). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

       1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

       2.     Federal Review of State Court Decision

In Issue Ten of Petitioner's state habeas petition, he argued:

> Grantham was fully loaded with equipment and dressed in uniform while running full force when he heard a thud ten-to-fifteen feet in front of him. Mr. Bayhi [defense counsel] could have required Grantham to demonstrate the volume of noise while Mr. Bayhi had someone toss a yellow pill bottle next to a wooden object. (T36, L3; T48, L8–17). The object was tossed contrary to have been thrown [sic] two-three feet from petitioner. Appellate counsel's failure to argue Mr. Bayhi's failure to present a defense was an unreasonable ommission which no competent attorney would have committed. As a result of appellate counsel's omission, petitioner had been denied of his constitutional right to effective appellate counsel. Had this omission not been committed, petitioner's direct appeal would have resulted in a reversal.

(Ex. DD at 8). The First DCA denied this claim on the merits (Ex. EE).

The trial transcript demonstrates that during cross-examination of Officer Grantham, defense counsel elicited testimony that while Grantham was chasing Petitioner, Grantham's equipment was making noise, and Petitioner was making noise while he ran (Ex. B at 48). It was not apparent from the face of the record that trial counsel was unreasonable for choosing cross-examination, instead of an in-court demonstration, as a means of challenging Officer Grantham's testimony that he heard a thud while he was chasing Petitioner. Further, it was not apparent that there was a reasonable probability of a different outcome at trial if trial counsel had attempted to re-enact the noise level during the chase. Therefore, appellate counsel was not ineffective for failing to raise this IATC claim on direct appeal.

Petitioner failed to demonstrate that the First DCA's denial of this IAAC claim was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on Ground "VIX."

## IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the third amended petition for writ of habeas corpus (ECF No. 20) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of October 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.